# NOAA Employee's Receipt of the Göteborg Award for Sustainable Development

Neither the Emoluments Clause of the Constitution nor the Foreign Gifts and Decorations Act would bar an employee of the National Oceanic and Atmospheric Administration from accepting the 2010 Göteborg Award for Sustainable Development.

October 6, 2010

MEMORANDUM OPINION FOR THE
ASSISTANT GENERAL COUNSEL
DEPARTMENT OF COMMERCE

You have asked for our opinion whether the Emoluments Clause of the Constitution would bar an employee of the National Oceanic and Atmospheric Administration ("NOAA") from accepting the 2010 Göteborg Award for Sustainable Development. *See* Memorandum for David J. Barron, Acting Assistant Attorney General, Office of Legal Counsel, from Barbara S. Fredericks, Assistant General Counsel, Department of Commerce (July 22, 2010) ("Commerce Memo"). The Clause forbids anyone "holding any Office of Profit or Trust" under the United States from accepting, without congressional consent, "any present, Emolument, Office, or Title, of any kind whatever, from any King, Prince, or foreign State." U.S. Const. art. I, § 9, cl. 8. On the facts you have provided, we conclude that the employee may accept the award without violating the Emoluments Clause, because the award would not be "from any King, Prince, or foreign State." For similar reasons, we conclude that acceptance of the award would not violate the Foreign Gifts and Decorations Act, 5 U.S.C. § 7342 (2006).

## I.

The Association for the Göteborg Award for Sustainable Development ("Göteborg Award Association") has chosen a NOAA scientist* to be one

---

\* Editor's Note: For privacy reasons, the published version of this opinion does not identify the NOAA scientist.

of two recipients of the 2010 Göteborg Award.[1] The award consists of one million Swedish Kroner (approximately $142,000) to be shared equally with the co-recipient, travel expenses to the award ceremony in Sweden, and a ceremonial globe.

The Göteborg Award Association is registered under Swedish law as a non-governmental entity, and its sole function is to administer the Göteborg Award. You have told us that the Association consists of the City of Göteborg and twelve businesses and that the Association is "funded one-third by the City and two-thirds by the private businesses." Commerce Memo at 1. The Association is managed by a Board of Trustees that currently consists of three officials of the City of Göteborg and one businessman. *See* Göteborg Award, Organisation, http://www.goteborgaward.com/en/informationssida/organisation.html (last visited Oct. 5, 2010). That Board appoints the seven-member jury that selects the winners and presents the award during a formal ceremony. None of the members of the jury that selected the 2010 awardees was a government official. The Göteborg Association's bylaws authorize the Board to act as the "ultimate decisionmaker," but you have told us that, as a matter of practice, neither the City of Göteborg nor the Association's Board has interfered with the jury's selection process during the ten years the award has existed. *See* Jacobi E-mail, *supra* note 1.

## II.

Under the Emoluments Clause of the Constitution, "no Person holding any Office of Profit or Trust under [the United States], shall, without the Consent of the Congress, accept of any present, Emolument, Office, or Title, of any kind whatever, from any King, Prince, or foreign State." U.S. Const. art. I, § 9, cl. 8. The Clause was intended to "preserv[e] foreign Ministers & other officers of the U.S. independent of external influence" by foreign governments. 2 *The Records of the Federal Convention of 1787*, at 389 (Max Farrand ed., rev. ed. 1966) (notes of James Madison); *see also* 3 *id.* at 327 (remarks of Governor Randolph) ("It was thought

---

[1] For the facts regarding the award, we rely chiefly upon the statements of the Commerce Department. *See* Commerce Memo at 1; *see also* E-mail for Pankaj Venugopal, Attorney-Adviser, Office of Legal Counsel, from Will Jacobi, Senior Counsel, Department of Commerce (Aug. 20, 2010) ("Jacobi E-mail").

proper, in order to exclude corruption and foreign influence, to prohibit any one in office from receiving or holding any emoluments from foreign states."); *President Reagan's Ability to Receive Retirement Benefits from the State of California*, 5 Op. O.L.C. 187, 188 (1981) (discussing background of ratification of the Clause).

In our view, the Emoluments Clause does not apply to the NOAA scientist's acceptance of the Göteborg Award because that prize would not be tendered by a "foreign State" within the Clause's meaning.[2] That view does not rest on the notion that the City of Göteborg is not a "foreign State" under the Emoluments Clause,[3] but rather on the conclusion, based on the representations you have made, that the City does not appear to control the granting of the Göteborg Award. Rather, the selection of the award recipients appears to be made by the Göteborg Award Association,

---

[2] In light of this conclusion, we do not address whether the NOAA scientist holds an "Office of Profit or Trust" within the meaning of the Emoluments Clause. Nor do we consider whether each element of the Göteborg Award—the cash prize, the travel to Sweden, or the ceremonial globe—is a "present" or "Emolument . . . of any kind whatever." U.S. Const. art I, § 9, cl. 8.

[3] We need not resolve that issue definitively here. At least once, we have informally advised that the term "foreign State" in the Emoluments Clause applies equally to national governments and to sub-national governmental units. *See* Memorandum for the Files from Rosemary Nidiry, Attorney-Adviser, *Re: Title of Honorary Village Chief from a Nigerian Village* at 2 (Jan. 19, 2001) (rejecting a "literal reading" of the term "foreign State" in the Emoluments Clause and noting that "just as 'King' and 'Prince' should be read to cover a foreign 'Queen' or 'Princess' or 'Duke,' 'foreign State' did not mean merely the 'national government of that foreign State,' but also should include any political governing entity within that foreign state"). And we appear to have assumed the same position in one of our published opinions. *See Applicability of Emoluments Clause to Employment of Government Employees by Foreign Public Universities*, 18 Op. O.L.C. 13, 19 (1994) ("*Foreign Public Universities*") (characterizing University of Victoria as "an instrumentality of a foreign state (the province of British Columbia)"). The Comptroller General has also taken the position that the Emoluments Clause is not limited to the national government of a foreign state. *See Major James D. Dunn*, B-251084, 1993 WL 426335, at *3 (Comp. Gen. Oct. 12, 1993) ("Foreign governmental influence can just as readily occur whether a member is employed by local government within a foreign country or by the national government of the country. For this reason, we believe that the term 'foreign State' should be interpreted to include local governmental units within a foreign country as well as the national government itself."); *see also Military Personnel— Acceptance of Foreign Presents, Emoluments, etc.—Foreign Government Employment— Retired Enlisted Members*, 44 Comp. Gen. 130, 131 (1964) ("[T]he State of Tasmania must be considered a 'foreign State' within the meaning of the constitutional provision.").

acting through a jury appointed by the Board of the Association. The relevant question here is whether the decision to grant the award to a particular individual by the jury appointed by the Board of the Association is sufficiently independent of the government of the City of Göteborg that conferral of the award should not be deemed an action of a foreign state for the purposes of the Emoluments Clause. *See President's Receipt of the Nobel Peace Prize*, 33 Op. O.L.C. 370, 380–82 (2009) ("*Nobel Peace Prize*").

In previous opinions, the factors we have considered in conducting such an assessment include whether a foreign government has an active role in the management of the decisionmaking entity, *Foreign Public Universities*, 18 Op. O.L.C. at 15; whether a foreign government, as opposed to a private intermediary, makes the ultimate decision regarding the gift or emolument, Memorandum for John G. Gaine, General Counsel, Commodity Futures Trading Commission, from Leon Ulman, Deputy Assistant Attorney General, Office of Legal Counsel, *Re: Expense Reimbursement in Connection with Trip to Indonesia* (Aug. 11, 1980) ("*Indonesia Trip*"); *see also Application of the Emoluments Clause of the Constitution and the Foreign Gifts and Decorations Act*, 6 Op. O.L.C. 156 (1982); and whether a foreign government is a substantial source of funding for the entity, *see Applicability of Emoluments Clause to Proposed Service of Government Employee on Commission of International Historians*, 11 Op. O.L.C. 89, 90 (1987) ("*International Historians*"). No one of these factors has been dispositive. We have looked to them in combination to assess the status of the decisionmaking entity for purposes of the Clause, keeping in mind the underlying purpose that the Clause serves. *See, e.g.*, Memorandum for H. Gerald Staub, Office of Chief Counsel, NASA, from Samuel A. Alito, Jr., Deputy Assistant Attorney General, Office of Legal Counsel, *Re: Emoluments Clause Questions Raised by NASA Scientist's Proposed Consulting Arrangement with the University of New South Wales* at 4–5 (May 23, 1986) ("*NASA Scientist*") ("The answer to the Emoluments Clause question . . . must depend [on] whether the consultancy would raise the kind of concern (viz., the potential for 'corruption and foreign influence') that motivated the Framers in enacting the constitutional prohibition").

Although the question is close, we believe that the Göteborg Award Association, acting through the jury, is not an instrumentality of a foreign

state for purposes of the Emoluments Clause. As you have told us, the Association is governed by a Board, a majority of whose members are City officials. For the Emoluments Clause analysis, however, this fact is less significant than the composition of the entity that actually selects award recipients. The selection is made not by the Association as a whole or by its Board, but by the jury of seven private individuals, without interference from the Association's members, including the municipal government. To be sure, the bylaws of the Association designate the Board as the "ultimate decisionmaker," and we assume that this control could potentially include the authority to veto the jury's selection of award winners. Our Office's precedents nonetheless suggest that such ultimate authority is not dispositive where, as here, there is a strong indication that the decision at issue was in fact made autonomously and without governmental influence.

In our *Foreign Public Universities* opinion, for example, we considered whether the University of British Columbia's hiring of faculty members was so independent of the provincial government's control as not to implicate the Emoluments Clause. We acknowledged that the University's faculty was "constituted by the board [of governors]," a majority of whose members were appointed by the provincial government. 18 Op. O.L.C. at 14–15, 22. We nevertheless determined that the Emoluments Clause was inapplicable, in significant part because there was no evidence of a governmental effort to influence the University's faculty hiring decisions. *Id.* at 15 ("[T]he [U]niversity can be shown to be acting independently of the foreign state with respect to its faculty employment decisions."); *id.* at 20–21 ("'There is nothing to indicate that in entering into these arrangements, the universities were in any way following the dictates of the government. They were acting purely on their own initiative.'" (quoting *McKinney v. Univ. of Guelph*, [1990] 3 S.C.R. 229, 269, 273 (Can.))); *id.* at 20 (noting "the autonomy of the provincial universities when making faculty employment decisions"). Despite the board of governors' "ultimate" control over the constitution of the faculty, *id.* at 20, faculty hiring decisions were, in practice, made autonomously by the University itself.[4]

---

[4] We acknowledge that, in the *Foreign Public Universities* opinion, decisions of Canadian courts had affirmed the independence of the universities from day-to-day control by

Similarly, while the Board of the Göteborg Association may formally be the "ultimate decisionmaker" with respect to various aspects of the Göteborg Award, neither the Board nor the City of Göteborg has dictated the selection of recipients. Indeed, the Secretary of the Board, Lennart Wassenius, has represented that "[d]uring [his] close to ten years with the [A]ssociation it has been absolutely clear that the jury de facto has the complete control of and the full responsibility for the selection process as well as the final decision as regards the award. The Board has never discussed less so questioned, the work of the jury." Jacobi E-mail, *supra* note 1 (emphases deleted).[5]

Besides looking to whether the government makes the ultimate decision as to the conferral of a gift or emolument, our opinions indicate that a substantial amount of government funding may help to establish that an institution is an instrumentality of a "foreign State" for the purposes of the Emoluments Clause. For instance, our conclusion that a commission of international historians was a foreign state within the meaning of the Clause was based on the "Commission's establishment and funding" by the Austrian government. *International Historians*, 11 Op. O.L.C. at 89–90.

The presence of some public funding, however, does not necessarily mean that an institution counts as a "foreign State." Although the existence of significant public funding raises the potential for foreign governmental influence, other evidence of an entity's independence may establish that the Emoluments Clause does not apply. The more an entity is financed by a foreign government, the more likely it is that the state exercises control over that entity's decision to confer a present or emolu-

---

the government, 18 Op. O.L.C. at 20 (citing *Harrison v. Univ. of British Columbia*, [1990] 3 S.C.R. 451 (Can.); *McKinney v. Univ. of Guelph*, [1990] 3 S.C.R. 229 (Can.)), while here the conclusion that the jury is independent does not rest on a foreign judicial determination. The issue here is thus closer than in our earlier opinion. Even in *Foreign Public Universities*, however, we observed that the Canadian court cases, while "compelling evidence" of independence, "cannot of course determine our interpretation of the Emoluments Clause." *Id.* at 22. The question, here as there, is whether the decisionmaking entity is free from governmental control when it makes its selection.

[5] The Board does appoint the jury members, but in view of the private composition of the jury and its de facto autonomy in selecting award recipients, we do not view the Board's "appointment authority . . . as having dispositive significance." *Nobel Peace Prize*, 33 Op. O.L.C. at 384.

ment. A greater measure of public funding would require correspondingly stronger evidence that the foreign government does not in fact retain control over the decision at issue. Nevertheless, even when a foreign government was the sole source of funding for an institution, we have determined that the particular institution was not a foreign state because of its "functional and operational separation and independence" from the government. *See NASA Scientist* at 4. Such considerations of autonomy also informed our view that a federal officer could serve as a consultant to Harvard University on a project funded substantially, if not entirely, by the government of Indonesia. *See Indonesia Trip* at 5. Despite the funding by the foreign government, we determined that the Emoluments Clause did not apply because "Harvard has complete discretion in the selection" of consultants and Indonesia "neither controls nor even influences . . . [Harvard's] selection and payment of consultants." *Id.* at 4–5. Here, similarly, although the City of Göteborg's contribution of one-third of the Association's annual funding is significant, this factor does not outweigh the jury's consistent ten-year practice of selecting both the nominees for and ultimate recipients of the award without governmental interference.

On the facts presented, we accordingly conclude that the NOAA scientist's receipt of the award would not violate the Emoluments Clause.

## III.

The reasons making the Emoluments Clause inapplicable also lead to the conclusion that the NOAA scientist may accept the Göteborg Award without violating the Foreign Gifts and Decorations Act. The Act generally bars the acceptance of "gifts and decorations" from "foreign government[s]" except under certain limited circumstances. 5 U.S.C. § 7342(b)(2) (2006); *id.* § 7342(a)(3) (defining "gift" to mean "a tangible or intangible present (other than a decoration) tendered by, or received from, a foreign government"). We need not address whether any of those exceptions would apply here because we do not believe that the scientist would be receiving an award "tendered by, or received from, a foreign government."

In pertinent part, the Act defines the term "foreign government" to mean:

(A) any unit of foreign governmental authority, including any foreign national, State, local, and municipal government;

. . . and

(C) any agent or representative of any such unit or such organization, while acting as such.

*Id.* § 7342(a)(2).

Our Office previously gave some guidance about this definitional provision in the context of a prize awarded by the Alexander Von Humboldt Foundation. *See* Letter for Walter T. Skallerup, Jr., General Counsel, Department of the Navy, from Robert B. Shanks, Deputy Assistant Attorney General, Office of Legal Counsel (Mar. 17, 1983) ("*Von Humboldt Foundation*"). The Foundation was established and mainly financed by the West German government, and we noted that the West German government was undoubtedly a "unit of foreign governmental authority." *Id.* at 2. Yet we explained that it was not necessary "to go into the questions whether, in view of its intimate connection with the German Government, the Foundation should always be considered a foreign government." *Id.* at 3. Under the statute, the relevant question was instead whether the Alexander Von Humboldt Foundation was a "foreign government, as defined in section 7342(a)(2)(C), while it [was] acting as the agent for the German Government in connection with the administration of [the award program]." *Id.*; *see also* 5 U.S.C. § 7342(a)(2)(C) ("agent or representative . . . *while acting as such*" (emphasis added)). On the facts, we concluded that the Foundation was acting as an agent in awarding the prize. In particular, ministers of the German government sat not only on the Board of the Foundation, but also on the special committee of the Foundation that selected the award recipients.[6]

This prior interpretation of the Act supports the conclusion that the Göteborg Association is not a "foreign government" within the meaning of the Act. Although, as a "local" or "municipal government," the City of Göteborg is a "unit of foreign governmental authority," 5 U.S.C. § 7342(a)(2)(A), we do not believe that this definition of "foreign gov-

---

[6] Although we concluded that the award was from a foreign government, we advised that the award could be accepted because it fell within the Act's exception for "educational scholarship[s]." *Von Humboldt Foundation* at 4 (citing 5 U.S.C. § 7342(c)(1)(B)).

ernment" applies to the Göteborg Award Association, which is registered as a non-governmental entity under Swedish law, when it acts through its award jury consisting of private persons. To be sure, the City's representation on the Association's Board makes it theoretically possible that the Association could function as an agent or representative of the City for certain purposes, but the critical question is whether the Association acts as an agent or representative of the City in determining the winners of the award. *Id.* § 7342(a)(2)(C); *see also Von Humboldt Foundation* at 1. As explained above, the Association has assigned a jury of private persons the authority to select the recipients of the Göteborg Award—a decision made without interference by either the Board or the Association's members, including the city government. The Board does appoint the award jury's members, but the jury's private composition and decisional autonomy refute the idea that the jury members act as "agents or representatives" of the City when they choose the recipients of the Göteborg Award. Furthermore, unlike the special committee of the Von Humboldt Foundation, the Göteborg Award Association does not distribute a wholly (or even mostly) government-financed award. *See Von Humboldt Foundation* at 2. The majority of the Association's funding (two-thirds) comes from private businesses. The Act consequently poses no bar to the scientist's acceptance of the Göteborg Award.

## IV.

For the foregoing reasons, we conclude that neither the Emoluments Clause nor the Foreign Gifts and Decorations Act would prohibit the NOAA scientist from accepting the Göteborg Award.[7]

DANIEL L. KOFFSKY
*Deputy Assistant Attorney General*
*Office of Legal Counsel*

---

[7] We address here only the Emoluments Clause and the Foreign Gifts and Decorations Act. In particular, we do not consider 5 C.F.R. § 2635.502(d) (2010), a provision in the Standards of Ethical Conduct for Employees in the Executive Branch dealing with acceptance of awards.